**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PATRICK RANSOM,**

                                        **Plaintiff,**

        **vs.**                                          **1:09-cv-1272**
                                                          **(MAD/RFT)**

**UNITED STATES OF AMERICA,**

                                        **Defendant.**


_____


**APPEARANCES:**                          **OF COUNSEL:**

**PATRICK RANSOM**
P.O. Box 2025
Glens Falls, New York 12801
Plaintiff _pro se_

**OFFICE OF THE UNITED**                   **DIANE CAGINO, AUSA**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924
Attorneys for defendant


**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On November 13, 2009, plaintiff _pro se_ brought this action pursuant to the Federal Tort

Claims Act ("FTCA"), 28 U.S.C. § 2671 _et seq._, alleging medical malpractice by the Veterans

Administration, VA West Haven Healthcare System ("VA").  _See_ Dkt. No. 1.  Currently before

the Court is defendant's motion for summary judgment and to dismiss for failure to prosecute

pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

## II. BACKGROUND[1]

Plaintiff commenced this action alleging negligent medical care and treatment received at the VA. *See* Dkt. No. 1 at ¶ 4. The complaint alleges that, after a parotidectomy[2] in February of 2006 to remove a tumor, plaintiff developed a salivary fistula[3] and now has a drain hole behind his left ear that leaks. *See* Dkt. No. 18-3 at ¶ 2; Dkt. No. 1 at ¶ 4. Plaintiff alleges that this complication resulted from malpractice and has caused him pain and suffering. *See* Dkt. No. 1 at ¶ 4.

In his Administrative Claim, plaintiff alleged the following:

> I am writing this letter to describe my claim. In December of 2005 I was told I had a tumor in my salivary gland on my right side. I was evaaulated [sic] at West Haven EMT Clinic. They decided to do surgury [sic] in February of 2006. I came home after surgury [sic] and noticed that my cheek was swelling. When I went to go have the drain tube taken out, I tol [sic] them about this an [sic] they said there was nothing to worry about. A few days later I went back to have the stisches [sic] taken out. During then did they realize I had a problem. They filled a syringe with about 120cc of salivia [sic] out of my cheek. They pressure dressed it and sent me home to see if that would help. It did not do any good my cheek would still well up. They then put a drain tube in and repressured [sic] dressed to see if this would help. It did not help at all. They then said lets go back in and correct the problem. This was 2 weeks after first surgery. Everything was fine until the stiches [sic] came out. The saliva started leaking from a stich [sic] hole. They tried everything they knew to try. To this day I have a constant leak behind my ear. It gets worse with eating and smelling food. I went

---

[1] Since plaintiff failed to respond to defendant's motion for summary judgment, the Court has adopted the "Background" facts from defendant's Rule 7.1 statement, to the extent that those facts are supported by the record.

[2] A "parotidectomy" "is the removal of the parotid gland, a salivary gland near the ear." *Encyclopedia of Surgery*, "Parotidectomy," *available at* http://www.surgeryencyclopedia.com/La-Pa/Parotidectomy.html (last visited June 22, 2011).

[3] A "salivary fistula" is "[a]n opening between a salivary duct or gland and the skin surface of the oral cavity." The American Heritage Medical Dictionary (2007).

> back on February 23rd 2007.  At which time i [sic] was told there is
> nothing more they can do and i [sic] would live with this the rest of
> my life.  It has effected [sic] my eating habits and it is very hard to
> go out or over to peoples [sic] houses to eat.  When you feel
> embarrassed of it leaking.  All my records are at West Haven.

*See* Dkt. No. 18-6.

On August 23, 2010, a Rule 16 initial pretrial conference was held before Magistrate

Judge Treece.  In that conference, several deadlines were set, including, but not limited to,

plaintiff's expert disclosure deadline.  *See* Dkt. No. 14.  Thereafter, defendant forwarded

interrogatories and a notice to produce to plaintiff by Certified Mail on September 27, 2010,

which plaintiff signed for on September 29, 2010.  *See* Dkt. No. 18-7 at 2.  Plaintiff never

responded to these discovery demands.

On November 30, 2010, defendant forwarded a letter to plaintiff by Certified Mail, Return

Receipt Requested, asking him to comply with the discovery demands as well as the compulsory

Rule 26 disclosures.  Plaintiff signed for this letter on December 2, 2010.  *See* Dkt. No. 18-8.

Again, plaintiff failed to respond to defendant's November 30, 2010 letter.

On March 17, 2011, pursuant to the Court's directive at the Rule 16 conference, defendant

filed a status report outlining the discovery demands sent to plaintiff and his lack of response to

those demands.  *See* Dkt. No. 16.  In that status report, defendant made clear that if plaintiff was

not going to respond to discovery and/or hire an expert to support his claims, it was going to file a

motion to dismiss the complaint.  *See id.*  Defendant forwarded a copy of this report to plaintiff by

Certified Mail, Return Receipt Requested, which plaintiff signed for on March 22, 2011.  *See* Dkt.

No. 18-9.  Plaintiff never responded to defendant's status report.

Pursuant to the Uniform Pretrial Scheduling Order, plaintiff's expert disclosure deadline

was May 2, 2011.  *See* Dkt. No. 15.  Plaintiff has not provided defendant with any expert

disclosure, nor has he requested an extension of time to do so.  Defendant asserts that plaintiff has

not communicated in any manner whatsoever with defendant since the Rule 16 conference on

August 23, 2010.

Plaintiff has not responded to defendant's motion, which was due by June 20, 2011.  On

June 23, 2011, the Court issued a text notice setting a telephone status conference for July 11,

2011.  Plaintiff was directed to contact the Court immediately with a telephone number where he

could be reached for the conference and to contact the Court by July 8, 2011, if he would not be

available at the set date and time.  A copy of the text notice was mailed to plaintiff on June 29,

2011, by Certified Mail, Return Receipt Requested, which plaintiff signed for on July 6, 2011.

*See* Dkt. No. 19.[4]  Plaintiff never contacted the Court with a telephone number at which he could

be reached for the ordered conference.

### III. DISCUSSION

**A.**      **Defendant's motion for summary judgment**

   *1. Standard of review*

A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the

court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at

36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

---

[4] A copy of this text order was also sent to plaintiff by regular mail on June 23, 2011.  In an abundance of caution, however, the Court resent the notice on June 29, 2011, by Certified Mail, Return Receipt Requested.

motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quotation and other citations omitted).  "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).  While a court "'is not required to consider what the parties fail to point out,'" the court may, in its discretion, opt to conduct "an assiduous review of the record" even where a party fails to respond to the moving party's statement of material facts.

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation and other citations omitted).[5]

### 2. A claim for medical malpractice under New York State law

Defendant asserts that plaintiff cannot meet his *prima facie* burden without expert testimony, which he has failed to obtain and/or disclose.  Further, defendant claims that plaintiff's injuries were not the result of a negligent act or omission by defendant or any of its agents.  *See* Dkt. No. 11 at 2.

"It is well established in New York law that 'unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice.'" *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987) (citations omitted).

"A physician's obligations to his patient are to possess at least the degree of knowledge and skill possessed by the average member of the medical profession in the community in which he practices, to exercise ordinary and reasonable care in the application of that professional knowledge and skill, and to use his best judgment in the application of his knowledge and skill." *Id.*  "In order to show that the defendant has not exercised ordinary and reasonable care, the

---

[5] The liberal pleading standard for *pro se* litigants does not excuse them from following the procedural formalities of summary judgment. *See Govan*, 289 F. Supp. 2d at 295.  Local Rule 7.1(a)(3) of the Northern District of New York specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  This rule may be applied against *pro se* litigants; and a court is not obliged to conduct an independent review of the record to find proof of a factual dispute where a *pro se* plaintiff has failed to respond to the summary judgment motion in accordance with the applicable rules.  *See id.*

In the present matter, plaintiff has not responded to defendant's motion for summary judgment and has not provided the Court with any reason for his failure to do so.

plaintiff ordinarily must show what the accepted standards of practice were and that the defendant deviated from those standards or failed to apply whatever superior knowledge he had for the plaintiff's benefit." *Id.* at 739-40 (citations omitted).

"New York law recognizes the possibility that a deviation from a proper standard of care may be so clear and obvious that it will be within the understanding of the ordinary layman without the need for expert testimony." *Id.* at 740.  As the Second Circuit has explained, for example, "where a dentist has pulled the wrong tooth, . . . or where an unexplained injury has occurred to a part of the body remote from the site of the surgery, . . . expert testimony is not needed for the establishment of the plaintiff's prima facie case." *Id.* (citations omitted).  However, even if negligence is clearly within the layman's realm of knowledge, expert testimony may still be required to establish that the negligence was the proximate cause of the injury complained of because the patient's original affliction may be the actual cause of the plaintiff's complications. *See id.* (quotations omitted).

"Where such evidence is not proffered, the defendant is entitled to judgment as a matter of law, whether by means of a judgment notwithstanding a jury verdict in favor of the plaintiff, . . . or dismissal of the case at the close of the plaintiff's evidence, . . . or dismissal after an offer of proof where the plaintiff states that no expert medical evidence will be presented, . . . or the granting of a motion for summary judgment in opposition to which the plaintiff fails to come forward with such evidence[.]" *Id.* at 740-41 (internal citations omitted).

In the present matter, plaintiff claims that, in February of 2006, he developed a fistula immediately following a surgery to remove a tumor in his salivary gland. *See* Dkt. No. 1 at 2. Plaintiff also claims that a second surgery to correct the problem was unsuccessful and that his doctors informed him that nothing more could be done to correct this complication. *See id.*  The

Court has no difficulty holding that the issue of whether plaintiff's post-surgical complications was the result of defendant's negligence is outside of the unassisted competence of a lay trier-of-fact. *See Weldon v. United States*, 744 F. Supp. 408, 411 (N.D.N.Y. 1990). It cannot reasonably be thought that plaintiff's procedures, or the normal anatomical considerations that underlie them, are within the common knowledge of ordinary lay persons. Further, a lay trier-of-fact cannot reasonably be expected, without expert assistance, to know whether the complications of which plaintiff complains were the result of negligent medical care or to know how often this alleged complication occurs in a surgery of this nature. *See Sitts*, 811 F.2d at 740 (quotations omitted).

Based on the foregoing, the Court finds that this is not the "rare case in which a prima facie case of medical malpractice may be established without the presentation of expert medical testimony." *Id.* at 741. As such, the Court grants defendant's motion for summary judgment.

**B.      Defendant's motion to dismiss for failure to prosecute[6]**

Rule 41(b) of the Federal Rules of Civil Procedure provides that,

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). Dismissal of an action with prejudice under this rule is a "harsh remedy to be utilized only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (internal quotation marks and citation omitted). This is particularly true where a

---

[6] Although the Court has granted defendant's motion for summary judgment, as set forth below, the Court holds that, in the alternative, plaintiff's complaint is dismissed for his failure to prosecute.

plaintiff is proceeding *pro se*.  *See, e.g., Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (holding that the circuit court will give due deference to the district court's Rule 41(b) dismissal of a *pro se* litigant's complaint "only when the circumstances are sufficiently extreme").

Notwithstanding a plaintiff's *pro se* status, Rule 41(b) gives the district court explicit authority to dismiss a case where the plaintiff fails to comply with the court's orders or otherwise fails to "diligently" prosecute the action.  *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982).  As explained in *Lyell Theatre*, this authority "is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts."  *Id.* at 42.

In determining whether dismissal for failure to prosecute is warranted, the district court must consider the following factors, none of which are dispositive: (1) the duration of the plaintiff's failures; (2) whether the plaintiff received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights; and (5) whether lesser sanctions would be appropriate. *See United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004) (citations omitted).

### 1. Duration of delay

The relevant inquiry on this factor is twofold: (1) whether the plaintiff is at fault for failing to prosecute, and (2) whether the plaintiff's failures were of significant duration.  *See id.* (citation omitted).  There is no "magic number" when determining whether the length of the delay was of significant duration.  *See Copeland v. Rosen*, 194 F.R.D. 127, 132 (S.D.N.Y. 2000).

In the present matter, plaintiff is solely at fault for failing to prosecute.  Plaintiff has not communicated in any manner whatsoever with either defendant or the Court since the Rule 16 conference on August 23, 2010, which has brought this case to a near standstill.  During this eleven-month period, plaintiff failed to (1) abide by several Court-ordered deadlines, (2) provide required discovery, (3) respond to the present motion, and (4) participate in a Court ordered telephone conference to discuss the status of this case.  Approximately eleven (11) months is a failure of significant duration.  *See, e.g., Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (stating that it is possible that a delay of thirty-nine days could be considered significant); *Deptola v. Doe*, No. 04-CV-1379, 2005 WL 2483341, *2 (E.D.N.Y. Oct. 7, 2005) (dismissing case for failure to prosecute three months after *pro se* plaintiff failed to appear at a scheduling conference); *Wilson v. Oxford Health Plans (N.Y.), Inc.*, No. 01-CV-3417, 2002 WL 1770813, *2-*4 (S.D.N.Y. July 31, 2002) (dismissing for failure to prosecute almost four months after plaintiff failed to respond to a court order); *Lopez v. Catholic Charities of the Archdiocese of N.Y.*, No. 00-CV-1247, 2001 WL 50896, *4 (S.D.N.Y. Jan. 22, 2001) (dismissing for failure to prosecute when plaintiff "ceased to prosecute . . . action at all" for three months); *Antonios A. Alevizopoulos & Assoc., Inc. v. Comcast Int'l Holdings, Inc.*, No. 99 Civ. 9311, 2000 WL 1677984, *2 (S.D.N.Y. Nov.8, 2000) (finding that delay of four months warranted dismissal); *Peters-Turnbull v. Board of Educ. of the City of N.Y.*, No. 96-CV-4914, 1999 WL 959375, *2-3 (S.D.N.Y. Oct.20, 1999) (stating that delay of between five and ten months "falls comfortably within the time frames found sufficient in successful Rule 41(b) motions to dismiss").

Since all delay in this case is attributable to plaintiff, and because the delay is of significant duration, this factor weighs in favor of dismissal.

### 2. Notice

The Second Circuit requires that the plaintiff receive adequate notice that his case could be dismissed due to inaction.  *See Martens v. Thomann*, 273 F.3d 159, 180-81 (2d Cir. 2001).  In the present matter, in its March 17, 2011 status report, defendant informed plaintiff and the Court that, since plaintiff had failed to and was unlikely to hire an expert witness or comply with discovery demands, it was likely going to file a motion to dismiss.  *See* Dkt. No. 16.  Moreover, the Court ordered that the parties participate in a telephone conference on July 11, 2011, in which the Court intended to discuss with plaintiff whether he intended to continue with this case and to inform him of the potential consequences of failing to prosecute the case diligently and ignoring court orders.  Plaintiff, however, never informed the Court of a contact number at which he could be reached and failed to call the Court at the time and date provided in the order.[7]

### 3. Prejudice to defendant

The third factor requires an inquiry into whether the defendant has been prejudiced by the plaintiff's inaction.  "Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionately greater."  *Lyell Theatre*, 682 F.2d at 43 (citations omitted).

In the present matter, the delay created by plaintiff's refusal to cooperate with discovery requests is clearly prejudicial.  *See United States ex rel. Roundtree v. Health and Hospitals Police Department*, No. 06 Civ. 212, 2007 WL 1428428, *1-*2 (S.D.N.Y. May 14, 2007) (dismissing case because the plaintiff failed to provide the court or the defendants with contact information); *Mathews v. U.S. Shoe Corp.*, 176 F.R.D. 442, 445 (W.D.N.Y. 1997) (dismissing case because the

---

[7] Plaintiff received notice of this Court's order on July 6, 2011.  *See* Dkt. No. 19.

defendant was prejudiced by the *pro se* plaintiff's failure to comply with the defendant's discovery requests). Plaintiff's non-compliance has left defendant unable to begin to prepare its case, since the requested discovery would provide the basic information necessary to proceed. Specifically, plaintiff has failed to provide any expert disclosure, respond to defendant's discovery demands, serve any discovery demands, discuss the selection of a mediator, schedule mediation, schedule any depositions, or sign and return the HIPAA releases necessary for defendant to obtain plaintiff's medical records.

Based on the foregoing, the Court finds that this factor weighs in favor of dismissal.

### 4. Balance between calendar congestion and due process rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her case. *See Norden Sys.*, 375 F.3d at 257. In this regard, "'a court must not let its zeal for a tidy calendar overcome its duty to justice.'" *Feurtado*, 225 F.R.D. at 480 (quoting *Davis v. United Fruit Co.*, 402 F.2d 328, 331 (2d Cir. 1968)).

Plaintiff's inaction in the present matter has delayed this case for approximately eleven (11) months. While one case more or less has little impact on the Court's docket, plaintiff's failure to abide by this Court's orders and to comply with his discovery obligations under the Federal Rules undermines any claim that this factor does not weigh in favor of dismissal. *See Lediju v. N.Y.C. Dep't of Sanitation* 173 F.R.D. 105, 111-12 (S.D.N.Y. 1997); *Lukensow v. Harley Cars of N.Y.*, 124 F.R.D. 64, 67 (S.D.N.Y. 1989). Moreover, plaintiff has been afforded due process rights in that he has been provided ample opportunity to comply with his discovery obligations and this Court's orders. Thus, plaintiff's own failure to litigate this matter is not a denial of due process. *See Dodson v. Runyon*, 957 F. Supp. 465, 470 (S.D.N.Y. 1997) (holding

that "any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making"); *see also Feurtado*, 225 F.R.D. at 480.

Accordingly, the Court finds that this factor weighs in favor of dismissal.

### 5. Consideration of lesser sanctions

Finally, the Second Circuit requires district courts to consider whether lesser sanctions would sufficiently remedy any prejudice resulting from the plaintiff's inaction. *See Norden Sys.*, 375 F.3d at 257.

No sanction short of dismissal is appropriate. In a case where a party's delay has caused the adversary only to incur expenses, monetary sanctions may be sufficient. But here, in addition to expending the effort of moving to compel discovery, defendant has also suffered prejudice in its ability to prepare for trial. And, while an adverse inference might in some circumstances be a sufficient remedy, that is not the case here. The discovery that plaintiff has failed to produce goes to the heart of his case. Consequently, while an adverse inference would ultimately be fatal to his claims, it would be unfair to require defendant to expend still more resources to reach the inevitable result of dismissal.

As such, the Court finds that this factor weighs in favor of dismissal.

Mindful of the fact that *pro se* cases should not readily be dismissed for procedural deficiencies, the Court concludes that plaintiff's failures in this case go beyond procedural deficiencies and constitute actual neglect. Plaintiff has failed to prosecute this action diligently, and has failed to comply with orders of this Court. As such, the Court finds that each of the

factors relevant to the Rule 41(b) analysis favors dismissal; and, therefore, in the alternative, dismisses plaintiff's complaint pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that defendant's motion for summary judgment (Dkt. No. 18) is **GRANTED**; and the Court further

**ORDERS** that, in the alternative, defendant's motion to dismiss for failure to prosecute is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of defendant and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 15, 2011
       Albany, New York

Mae A. D'Agostino
U.S. District Judge